*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2004 FED App. 0245P (6th Cir.)
File Name: 04a0245p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

O'NEILL WARNER,
          *Petitioner,*

          *v.*

JOHN ASHCROFT, et al.,
          *Respondent.*

No. 02-3676

On Appeal from the Board of Immigration Appeals.
No. A74 124 572.

Submitted: March 12, 2004

Decided and Filed: April 16, 2004[*]

Before: MERRITT and DAUGHTREY, Circuit Judges;
HOOD, District Judge.[**]

_____

[*] This decision was originally issued as an "unpublished decision" filed on April 16, 2004. On July 2, 2004, the court designated the opinion as one recommended for full-text publication.

[**] The Honorable Joseph M. Hood, United States District Judge for the Eastern District of Kentucky, sitting by designation.

_____

## COUNSEL

**ON BRIEF:** Scott E. Bratton, MARGARET WONG & ASSOCIATES CO., Cleveland, Ohio, for Petitioner. Papu Sandhu, Allen W. Hausman, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

_____

## OPINION

_____

HOOD, District Judge. In this appeal, we are called upon to review an order of exclusion issued by the United States Immigration and Naturalization Service ("INS"). After reviewing the briefs of the parties in light of the applicable law, we are not persuaded that the INS erred in reinstating Petitioner's order of exclusion.

## I. FACTUAL BACKGROUND

Petitioner Warner is a citizen and native of Jamaica. In July 1996, Warner first attempted to enter the United States by presenting a fraudulent passport to immigration authorities at Miami International Airport. On July 5, 1996, he was deported from the United States pursuant to an order of exclusion. Petitioner then illegally reentered the United States without inspection in July 1998. After he reentered the United States, he married a United States citizen. On April 30, 2001, Petitioner filed an I-130/485 application attempting to gain legal residency. This application, however, was denied by the INS based on his illegal reentry after his exclusion in 1996.

On June 11, 2002, the INS issued a Notice of Intent to Reinstate Prior Order against Warner. In response to this Notice, Warner submitted a vague written statement in which

he indicated that he feared returning to Jamaica because of the crime and the poor educational system. There was no stated fear of being persecuted or tortured by the Jamaican Government or some group in Jamaica. On July 11, 2002, the INS reinstated Warner's prior order of exclusion pursuant to INA § 241(a)(5), 8 U.S.C. § 1231(a)(5), which authorizes the Attorney General to reinstate a prior order of removal against an alien who illegally enters the country after execution of that order and provides for the removal of the alien without any additional administrative proceedings.

On June 19, 2002, Warner filed a petition for review in this Court challenging the INS' reinstatement order and seeking a stay of removal. On August 13, 2002, the Court denied the motion for a stay of removal. On August 5, 2002, Petitioner filed his first proof brief in which he challenged, among other things, the INS' failure to provide him with a "reasonable fear" interview based on his fear of returning to Jamaica. Subsequently, the parties agreed to suspend the briefing schedule while the INS provided Warner with a reasonable fear determination. On October 15, 2002, the INS determined that Warner did not have a reasonable fear of returning to Jamaica. This determination was affirmed by an immigration judge. Warner then filed his amended proof brief on January 9, 2003. In his amended brief, Warner does not challenge the INS' or the immigration judge's determination that he does not have a reasonable fear of being removed to Jamaica. Rather, Petitioner raises various issues regarding § 241(a)(5) of the Immigration and Nationality Act and its applicability to the reinstatement of his order of exclusion.

## II. JURISDICTION

This Court has jurisdiction over Warner's petition for review pursuant to 8 U.S.C. § 1252(b) of the Immigration and Nationality Act ("INA"), which authorizes the courts of appeals to review orders of removal.

## III. DISCUSSION

Petitioner Warner presents four main issues for this Court to review: (1) whether INA § 241(a)(5) applies to orders of exclusion; (2) whether the application of INA § 241(a)(5) to orders of exclusion issued before April 1, 1997 is impermissibly retroactive; (3) whether INA §241(a)(5) violates Petitioner's due process rights; and (4) whether the INS erroneously reinstated the order of exclusion against Petitioner after denying his adjustment of status application because of INA § 241(a)(5).

## A. INA § 241(a)(5) and its Application to the Reinstatement of Exclusion Orders

Petitioner contends that INA § 241(a)(5) cannot be used to reinstate his final order of exclusion. INA § 241(a)(5) states:

> If the Attorney General finds that an alien has reentered the United States illegally after having been removed or having departed voluntarily, under an order of removal, the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed, the alien is not eligible and may not apply for any relief under this [Act], and the alien shall be removed under the prior order at any time after the reentry.

INA § 241(a)(5), 8 U.S.C. § 1231(a)(5). This provision of the INA was enacted as part of the Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA), Pub. L. No. 104-208, 110 Stat. 3009 (1996), on September 30, 1996 and became effective on April 1, 1997. Prior to the enactment of the IIRIRA, INA § 242(f) governed the reinstatement of orders of deportation. INA § 242(f) did not apply to reentries occurring after prior orders of exclusion. Petitioner Warner contends that this newer provision, INA § 241(a)(5), likewise does not apply to the reinstatement of prior orders of removal since the terms deportation and exclusion are absent from its language.

Respondent argues that INA § 241(a)(5) does indeed allow for the reinstatement of prior exclusion orders. The language in IIRIRA § 309(d)(2), 110 Stat, 3009-627, provides that an order of removal includes "an order of exclusion and deportation or an order of deportation." Therefore, Respondent asserts that the references to removal within the INA § 241(a)(5) provision likewise apply to orders of exclusion. Petitioner Warner attempts to rebut Respondent's argument by claiming that IIRIRA § 309(d)(2) is merely part of IIRIRA's transitional rules. Petitioner believes that this case is governed by IIRIRA's permanent rules as codified in the INA. The Fourth Circuit has addressed this same issue in *Velasquez-Ghabriel v. Crocetti*, 263 F.3d 102 (4th Cir. 2001). In *Velasquez-Ghabriel*, the court rejected the notion that IIRIRA § 309(d)(2) applies only in "transitional rule" cases. According to the Fourth Circuit, § 309(c) of the IIRIRA "establishes transitional rules for ongoing proceedings, but there is no indication that § 309(d) is also a transitional rule that applies solely to ongoing, not post-enactment, proceedings. In fact, such a reading would eviscerate IIRIRA's streamlined removal procedures by resurrecting the distinctions between 'removal,' 'deportation,' and 'exclusion' that § 309(d)(2) sought to abolish." *Velasquez-Gabriel* at 105.

Despite Petitioner Warner's attempts to employ rules of statutory construction to support his argument, this Court finds that removal orders in INA § 241(a)(5) include exclusion and deportation orders. IIRIRA § 309(d)(2) specifically provides for such an interpretation. Being that IIRIRA § 309(d)(2) is not merely a transitional rule, orders of removal include orders of exclusion for purposes of INA § 241(a)(5).

## B. Retroactivity Analysis

Petitioner argues that INA § 241(a)(5) is impermissibly retroactive when applied to orders of exclusion issued before IIRIRA's enactment date. In *Bejjani v. INS*, 271 F.3d 670

(6th Cir. 2001), this Court held that INA § 241(a)(5) could not be applied retroactively to reinstate prior orders of removal of aliens who reentered the country prior to April 1, 1997, which is the effective date of INA § 241(a)(5). *Bejjani* at 687. However, the *Bejjani* case does not address the present issue of an alien who illegally reentered the U.S. after April 1, 1997 but whose first order of exclusion was entered before April 1, 1997.

The Supreme Court has set forth a retroactivity test in *Landgraf v. USI Film Products*, 511 U.S. 244 (1994). The first inquiry into determining whether a new statute applies to pre-enactment events is whether Congress had spoken on the statute's reach. *Landgraf* at 280. This inquiry involves two parts: (1) whether Congress has expressly prescribed for the statute's temporal reach; and, if not (2) whether Congress' intent can be clearly ascertained from the text, structure and history of the legislation. *Bejjani* at 677. If Congress has spoken on the issue, the inquiry is over and Congress' intent controls. *Id.* However, if Congress has not spoken on the issue, "the court must determine whether the new statute would have a retroactive effect, i.e. whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." *Landgraf* at 280.

Since § 241(a)(5) is silent as to its temporal reach, courts must look to other evidence to ascertain Congress' intent. In *Bejjani*, this Court found that the decision to completely eliminate the retroactive language found in the preceding statute, § 242(f), from the new § 241(a)(5) statute was evidence sufficient to show that Congress did not intend for § 241(a)(5) to apply to reentries occurring prior to the statute's effective date. *Bejjani* at 686. However, the rationale set forth in *Bejjani* is not directly on point in the instant action since Petitioner Warner reentered the United States after the effective date of § 241(a)(5). In this action, there exists no pre-enactment conduct sufficient to constitute a basis for a retroactivity claim.

Petitioner Warner attempts to base his retroactivity argument on the fact that he was excluded and deported prior to IIRIRA's enactment. He claims that he was not, at that time, on notice that he could be later subjected to a streamlined removal process if he illegally reentered the country. However, this argument is unpersuasive. "A statute does not operate 'retrospectively' merely because it is applied in a case arising from conduct antedating the statute's enactment ... or upsets expectations based in prior law." *Landgraf* at 269. Petitioner Warner was on notice of the consequences of his illegal reentry before he chose to illegally reenter the United States. Therefore, this Court finds no impermissible retroactive effect.

**C. Due Process**

Petitioner Warner claims that the application of INA § 241(a)(5) and 8 C.F.R. § 241.8 to this case violates his due process rights. Aliens subject to orders of reinstatement enjoy Fifth Amendment protection. *Castro-Cortez v. I.N.S.*, 239 F.3d 1037, 1049 (9th Cir. 2001). Even if an alien enters the United States illegally, he or she "may be expelled only after proceedings conforming to traditional standards of fairness encompassed in due process of law." *Shaughnessy v. United States ex rel Mezei*, 345 U.S. 206, 212 (1953).

8 C.F.R. § 241.8 provides that an alien who illegally reenters the United States does not have a right to a hearing before an immigration judge regarding the reinstatement of a prior removal order. Rather, an immigration officer conducts an investigation in order to determine: (1) whether the alien has been subject to a prior order; (2) whether the alien is in fact an alien who was previously removed or departed voluntarily under a prior order; and (3) whether the alien unlawfully entered the United States after his removal. C.F.R. § 241.8(a). If the officer determines that an alien is subject to having his removal order reinstated then the officer must provide written notice to the alien. C.F.R. § 241.8(b). Thereafter, the alien has the opportunity to contest the

determination through a written or oral statement. *Id.* After all of these procedures have been completed, the alien shall be removed under the previous order of exclusion or removal. C.F.R. § 241.8 (c).

Petitioner argues that his due process rights were violated by the fact that his exclusion order was reinstated under § 241(a)(5) without him being able to apply for any type of relief. Additionally, Warner believes the procedures associated with the reinstatement process, set forth in C.F.R. § 241.8, deny him procedural due process. Particularly, Petitioner Warner contends that he was denied a hearing before an immigration judge, a right to appeal to the BIA, the right to develop a record, representation by counsel, a right to request relief, and adequate notice of the government's intended action, all in violation of his due process rights.

Respondent argues that Warner's due process claim must fail because he has not shown he was prejudiced by the claimed constitutional violations. Such proof of prejudice is necessary to establish a due process violation in an immigration hearing. *Ojeda-Terrazas v. Ashcroft*, 290 F.3d 292, 302 (5th Cir. 2002); *United States v. Proa-Tovar*, 975 F.2d 592, 595 (9th Cir. 1992)(*en banc*). Petitioner Warner has not shown any prejudice resulting from the alleged constitutional deficiency. He never, within his briefs, contests the fact that he is an illegally reentering alien. Therefore, even if Warner had been provided with a full hearing before an immigration judge, there is no doubt that his prior exclusion order would have been reinstated. Since Warner has not demonstrated any prejudice, his due process claims must fail.[1]

---

[1]Respondent also asserts that Petitioner's due process argument fails on its merits. The Supreme Court has stressed that "over no conceivable subject is the legislative power of Congress more complete than it is over the admission of aliens." *Reno v. Flores*, 507 U.S. 292, 305-06 (1993). Therefore, the role of the judiciary is limited and the Court should weigh heavily the government's interests in a *Mathews v. Eldridge*, 424 U.S. 319

## D. Application of § 241(a)(5) to §245(i)

Pursuant to INA § 245(i), Petitioner filed an I-130/485 adjustment of status application based on his marriage to a United States citizen. However, on June 11, 2002, the INS denied the adjustment of status application stating that Warner is statutorily ineligible to adjust his status because he had been previously ordered excluded and subsequently illegally entered the United States. Thereafter, the INS reinstated Petitioner's prior order of exclusion pursuant to § 241(a)(5).

Warner believes that the INS erroneously concluded that he was statutorily ineligible to adjust his status under INA § 245(i). According to Petitioner, an exception exists to INA § 245's general rule that an alien entering the country without inspection is statutorily barred from adjustment of status. This exception provides that an alien who is physically present in the U.S. but who "entered the United States without inspection ... may apply to the Attorney General for the adjustment of status to that of an alien admitted for lawful permanent residence." INA § 245(i). Petitioner Warner claims that § 245(i) allows him to adjust his status. He asserts that § 245(i) does not cross-reference § 241(a)(5) nor does it mention any language that would bar adjustment to aliens who illegally reentered the U.S. after being deported. *Prado Hernandez v. Reno*, 86 F.Supp.2d 1037, 1041 (W.D. Wash. 1999). Since § 245(i) does not specifically exclude aliens subject to § 241(a)(5), Petitioner believes he should be allowed to change his status under § 245(i).

INA § 241(a)(5) states that aliens who fall under this provision "are not eligible and may not apply for any relief under this chapter." Therefore, aliens whose prior orders of

removal are reinstated under § 241(a)(5) should not be eligible for relief under § 245(i). If such aliens could obtain relief under § 245(i), they could avoid Congress' bar on relief in § 241(a)(5) simply by applying for adjustment of status as soon as they illegally enter the United States. Respondent contends that Congress has not excepted the relief available under § 245(i) from the § 241(a)(5) bar. Further, Respondent points out that Congress could have carved out such an exception if it so wished.[2] This Court finds that § 245(i) has no effect upon § 241(a)(5)'s preclusion of other relief. *See Alvarez-Portillo v. Ashcroft,* 280 F.3d 858, 862 (8th Cir. 2002) (rejecting as meritless the argument that § 245(i) conflicts with and supercedes § 245(a)(5)). Therefore, aliens such as Petitioner Warner whose prior orders of removal are reinstated under § 241(a)(5) are not eligible for relief under § 245(i).

## IV.  CONCLUSION

Accordingly, the INS did not err in reinstating Petitioner Warner's order of exclusion under § 241(a)(5). Therefore, the decision by the INS is hereby **AFFIRMED**.

---

(1976), due process determination. Although it appears likely that Petitioner's due process claim would fail on its merits, this Court need not address the merits since there exists no demonstration of prejudice.

---

[2] Congress has set forth specific exceptions to the reinstatement provision of § 241(a)(5) for certain Nicaraguan, Cuban, and Haitian applicants in § 1505 of the Life Act Amendments of 2000, P.L. 106-554, 114 Stat, 2763 (2000).